FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2019 JUL 30 PM 3:42

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.

DAVID MARTIN GOLLOHER

CASE NO. 6:19-cr-172-ORL-37EJK
18 U.S.C. § 1343
26 U.S.C. § 7202
18 U.S.C. § 152

## INFORMATION

The United States Attorney charges:

### COUNT ONE
**(Wire Fraud)**

#### A. Introduction

At times material to this Information:

1. OATH Corporation was a Florida corporation registered with the Florida Department of State, with its principal place of business located in Brevard County, Florida, in the Middle District of Florida.

2. DAVID MARTIN GOLLOHER was the President and Chief Executive Officer of OATH Corporation.

#### B. The Scheme Related to R.K.

3. Beginning in or about September 2014, and continuing through in or about November 2014, in the Middle District of Florida, and elsewhere,

DAVID MARTIN GOLLOHER

the defendant herein, did knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, which scheme and artifice is described as follows:

### C. Manner and Means of the Scheme Related to R.K.

4. It was part of the scheme and artifice related to R.K. that DAVID MARTIN GOLLOHER would and did unlawfully devise and execute a scheme and artifice to defraud individuals of money and property by means of materially false and fraudulent pretenses, representations, and promises.

5. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did approach an individual named R.K. and represent to R.K. that OATH Corporation manufactured patented ammunition that was considered the most effective law enforcement bullet ever invented.

6. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did represent to R.K. that OATH Corporation had no marketplace competitors.

7. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did represent to R.K. that he had a business plan in place to purchase and install specialized machinery to manufacture the bullets to meet "national demand," which DAVID MARTIN GOLLOHER claimed was high.

8. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did furnish to R.K. a detailed financial plan, including a revenue forecast predicting $1.5 million in sales during the first fiscal year, and $24.2 million and $54 million in the next two fiscal years.

9. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did convince R.K. that DAVID MARTIN GOLLOHER needed additional funds to get his personal financial affairs in order, so he could focus on developing OATH Corporation.

10. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did accept in his personal bank account a $50,000 wire payment from R.K. on or about September 30, 2014.

11. It was a further part of the scheme and artifice that on or about October 7, 2014, DAVID MARTIN GOLLOHER would and did persuade R.K. to execute an agreement (the "Agreement") with DAVID MARTIN

GOLLOHER. In the Agreement, R.K. agreed to invest in OATH Corporation.

12. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did persuade R.K. to personally pay DAVID MARTIN GOLLOHER $150,000 as part of the Agreement, and that R.K.'s $50,000 wire payment on or about September 30, 2014 counted as the first payment toward that sum.

13. It was a further part of the scheme and artifice that, pursuant to the Agreement, DAVID MARTIN GOLLOHER would and did accept into OATH Corporation's operating account a $100,000 wire payment from R.K. on or about October 24, 2014.

14. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did transfer from OATH Corporation's operating account, to his personal bank account, the $100,000 wire payment from R.K., even though DAVID MARTIN GOLLOHER knew that the wire payment from R.K. was a corporate investment under the terms of the Agreement.

15. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did conceal from R.K. the fact that

DAVID MARTIN GOLLOHER transferred the $100,000 wire payment from the OATH Corporation operating account to his own personal bank account.

16. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did transfer approximately $30,619 back to the OATH Corporation operating account from his own personal bank account.

17. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did keep the remaining $69,381 in his personal bank account, and use the funds for personal expenditures.

18. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did conceal from R.K. the fact that he kept the remaining $69,381 in his personal bank account, and used the funds for personal expenditures.

19. It was a further part of the scheme and artifice that on or about November 11, 2014, DAVID MARTIN GOLLOHER would and did falsely and fraudulently represent to R.K. that "the wire for $100,000 that was for me and my family was mistakenly sent to the OATH Corp account," and that DAVID MARTIN GOLLOHER had retained only $30,000 of that sum for personal use.

20. It was a further part of the scheme and artifice that on or about November 11, 2014, DAVID MARTIN GOLLOHER would and did falsely and fraudulently represent to R.K. that he "left the remainder of $70,000 in the OATH account so I could continue the company moving forward."

21. It was a further part of the scheme and artifice that on or about November 11, 2014, DAVID MARTIN GOLLOHER would and did make those false and fraudulent representations to R.K. with intent to defraud.

22. It was a further part of the scheme and artifice that on or about November 11, 2014, DAVID MARTIN GOLLOHER would and did request R.K. to pay the "$70,000 difference" in order to fulfill R.K.'s obligations under the Agreement.

23. It was a further part of the scheme and artifice that on or about November 12, 2014, DAVID MARTIN GOLLOHER would and did accept in his personal bank account a $100,000 wire payment from R.K., which R.K. made as a result of DAVID MARTIN GOLLOHER's false and fraudulent inducements and representations.

24. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did use interstate wires in furtherance of the scheme and artifice to defraud, by causing wire transfers of funds to be made from an account located outside of Florida, to an account located in the

Middle District of Florida, and by causing wire transfers of funds to be made by use of interstate wires.

### D. Wire

25. On or about November 12, 2014, in the Middle District of Florida, and elsewhere,

DAVID MARTIN GOLLOHER

the defendant herein, for the purpose of executing the aforesaid schemes and artifices to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds: an interstate wire in the amount of $100,000 from R.K. to the personal bank account of DAVID MARTIN GOLLOHER.

In violation of 18 U.S.C. § 1343.

### COUNT TWO
### (Wire Fraud)

### A. Introduction

26. The allegations contained in paragraphs 1 and 2 of Count One of this Information are hereby realleged and incorporated herein by reference.

7

### B.  The Scheme Related to G.K. and R.D.

27.  Beginning on an unknown date, but at least from on or about May 1, 2015, through and including on or about August 10, 2015, in the Middle District of Florida, and elsewhere,

### DAVID MARTIN GOLLOHER

the defendant herein, did knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, which scheme and artifice is described as follows:

### C.  Manner and Means of Scheme Related to G.K. and R.D.

28.  It was part of the scheme and artifice related to G.K. and R.D. that DAVID MARTIN GOLLOHER would and did unlawfully devise and execute a scheme and artifice to defraud individuals of money and property by means of materially false and fraudulent pretenses, representations, and promises.

29.  It was a further part of the scheme and artifice that in or about 2015, DAVID MARTIN GOLLOHER would and did approach R.D. and falsely and fraudulently represent that OATH Corporation, his ammunition

manufacturing company, was thriving, growing quickly, and conducting business nationwide.

30.    It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did falsely and fraudulently represent to R.D. that OATH Corporation already had active sales accounts in Georgia.

31.    It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did falsely and fraudulently represent that R.D. could take over those active sales accounts if he purchased from OATH Corporation exclusive rights to distribute OATH ammunition in the State of Georgia.

32.    It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did falsely and fraudulently represent that the exclusive distributorship in Georgia was worth $500,000.

33.    It was a further part of the scheme and artifice that when R.D. stated that he did not have enough money to purchase such a distributorship, DAVID MARTIN GOLLOHER would and did ask how much money R.D. could come up with.

34.    It was a further part of the scheme and artifice that when R.D. informed DAVID MARTIN GOLLOHER that he (R.D.) had approximately $25,000, DAVID MARTIN GOLLOHER would and did offer to sell the

exclusive distributorship in Georgia to R.D. if he could find a way to pay $50,000.

35. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did state that he was offering to sell the exclusive distributorship in Georgia to R.D. for $50,000 because he considered R.D. a good friend.

36. It was a further part of the scheme and artifice that beginning in or about May 2015, through and including in or about August 2015, DAVID MARTIN GOLLOHER would and did accept in his personal bank account $42,250 in wire and check payments from G.K., whom R.D. recruited to co-invest in the exclusive distributorship, based on DAVID MARTIN GOLLOHER's false and fraudulent representations and promises.

37. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did conceal and hide from R.D. and G.K. the fact that OATH Corporation did not have any sales accounts in Georgia.

38. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did conceal and hide from R.D. and G.K. the fact that OATH Corporation did not have a distributorship in Georgia.

39. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did merely send R.D. and G.K. a list of stores and pawn shops in Georgia that sold ammunition, because there was no distributorship in Georgia.

40. It was a further part of the scheme and artifice that DAVID MARTIN GOLLOHER would and did use interstate wires in furtherance of this scheme and artifice to defraud, by causing wire transfers of funds to be made from an account located outside of Florida, to an account located in the Middle District of Florida, and by causing wire transfers of funds to be made by use of interstate wires.

### D. <u>Wire</u>

41. On or about May 1, 2015, in the Middle District of Florida, and elsewhere,

DAVID MARTIN GOLLOHER

the defendant herein, for the purpose of executing the aforesaid schemes and artifices to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds: an

interstate wire in the amount of $19,000 from G.K. to the personal bank account of DAVID MARTIN GOLLOHER.

In violation of 18 U.S.C. § 1343.

## COUNT THREE
### (Willful Failure to Pay Over Tax)

On or about October 31, 2015, in the Middle District of Florida, and elsewhere,

DAVID MARTIN GOLLOHER,

the defendant herein, did willfully fail to truthfully account for and pay over to the Internal Revenue Service all of the federal income taxes withheld and Federal Insurance Contributions Act ("FICA") taxes due and owing to the United States on behalf of OATH Corporation and its employees, for the quarter ending September 30, 2015.

In violation of 26 U.S.C. § 7202.

## COUNT FOUR
### (False Bankruptcy Oath)

On or about August 22, 2016, in the Middle District of Florida, and elsewhere,

DAVID MARTIN GOLLOHER,

the defendant herein, knowingly and fraudulently made a material false declaration, certificate, verification, and statement under penalty of perjury, as

permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, In re OATH Corporation, No. 6:16-bk-03988-CCJ, by submitting an Amendment to Statement of Financial Affairs, in which the defendant fraudulently stated that he received approximately $217,729 in compensation and personal expenses from the company during the stated period, when in truth and in fact, as the defendant then and there well knew, he had received approximately $275,604 in compensation and personal expenses from the company during that period.

All in violation of 18 U.S.C. § 152(3).

## FORFEITURE

1.  The allegations contained in Counts One, Two, and Four are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.  Upon conviction of a violation of 18 U.S.C. § 1343 or 18 U.S.C. § 152, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.  The property to be forfeited includes, but is not limited to, the following: $111,631.

4. If any of the property described above, as a result of any act or omission of the defendant:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of the Court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Emily C. L. Chang
Assistant United States Attorney

By: _____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division